**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Frasiel L. HUGHEY,**
**Defendant–Appellant.**

**No. 87–5596.**

United States Court of Appeals,
Fifth Circuit.

July 27, 1989.

Lucien B. Campbell, Federal Public Defender, San Antonio, Tex., for defendant-appellant.

Michael R. Hardy, LeRoy Morgan Jahn, Daniel Maeso, Asst. U.S. Attys., for plaintiff-appellee.

Before REAVLEY, WILLIAMS and JONES, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Frasiel L. Hughey pleaded guilty to one count of illegal credit card use out of a six count indictment, pursuant to a plea bargain. Hughey now appeals the denial of his Fed.R.Crim.P. 35 motion to correct his sentence on the ground that it was error for the trial court to order him to pay restitution beyond that attributable to the one criminal act of which he pleaded guilty. He claims the amount of restitution assessed exceeds that authorized by the Victim and Witness Protection Act (the "VWPA") for four reasons: 1) It includes the value of losses caused by crimes of which he was not found guilty. 2) While it is true that a defendant need not be convicted of a particular offense for that offense to figure into restitution calculations in scheme or conspiracy convictions, Hughey was convicted of neither. 3) The wrong standard of proof was applied by the court. 4) The court did not sufficiently consider his indigency in its restitutive assessment. We affirm the trial court's assessment of restitution.

### Facts and Prior Proceedings

Hughey was charged in a second superseding indictment with three counts of mail theft (18 U.S.C. § 1709) and three

counts of fraudulent use of a credit card (18 U.S.C. § 1029(a)(2)). He pleaded guilty to count IV of the indictment, which alleged that on or about October 18, 1985, he misused a Mastercard issued by MBank to Hershey Godfrey by buying merchandise worth more than $1000.00 with it.

As part of the plea bargain, detailed in a letter to the court by Hughey's attorney, the government agreed to dismiss all the remaining counts of all three indictments and not to prosecute Hughey for "any other offense arising in the Western District of Texas as part of the scheme alleged in the indictment." The plea bargain was silent regarding restitution. The government offered as the factual basis for the guilty plea that Hughey was a postal employee, that one of his tasks was to place undelivered MBank credit cards in a specific San Antonio Post Office box, and that he had stolen the undelivered Godfrey credit card "as well as a number of other cards adding to more than 15 in number." Hughey specifically advised the court that he was not acknowledging or responding to any allegations other than count IV (misuse of the Godfrey credit card).

When taking the guilty plea, the court notified Hughey that it could impose restitutive obligations in addition to other penalties. After the plea but before sentencing, Hughey was notified by the United States Probation Office that restitution of $147,-646.89 might be sought at the time of sentencing. Hughey objected to this figure, and the government submitted a revised figure of $90,431, which was derived by adding up the losses resulting from unauthorized use of 21 credit cards issued by MBank to 19 individuals, including the Godfrey card.

In a hearing prior to sentencing, the government offered a stipulation of the testimony of witnesses that the government could produce who would testify with regard to Hughey's responsibility for the misuse of the 21 credit cards.[1] The defense made no objection but noted that this was a stipulation as to expected testimony, not fact.

In response to the government's proposed figure, Hughey offered to make restitution of $10,412, which he claimed was the sum representing the total loss caused by the unauthorized use of the Godfrey credit card. He argued that he could not be legally held responsible for any greater restitution under the VWPA.

On April 2, 1987, Hughey was sentenced to eight years for violation of 18 U.S.C. § 1029(a) (credit card fraud). Pursuant to the VWPA, 18 U.S.C. §§ 3579 and 3580 (1982 and Supp. IV 1986) (current versions at 18 U.S.C. §§ 3663 and 3664),[2] he was ordered to make restitution to MBank of $90,431.

---

1. As this stipulation formed the basis for the restitutive order (and the current appeal), it is useful to detail what facts the government planned to offer. The stipulations consisted of the following:

1) A Secret Service agent would testify that Clarence Thompson told him that Hughey gave Thompson 15 Visa or Mastercharge cards issued by MBank, and admitted to getting these cards from the post office where he worked.

2) A Postal Inspector would testify that "a business person" identified Hughey as having used an MBank Mastercharge card issued to James Windom.

3) Hughey's Postal Supervisor would testify that Hughey had access to the MBank post office box.

4) An investigator for MBank would testify that:
   a) Thomas Beatty said Hughey provided him with a total of 3 MBank charge cards.
   b) "Business persons identified the defendant in possession" of 2 additional MBank charge cards.

c) All of the listed charge card holders, totaling 19, reported charges they had not made on their cards (totalling 21—two of the cardholders each had two cards misappropriated), which they had not received in the mail.

d) The cards had all been addressed to people who had moved. The envelopes which held the cards were marked, "Do not forward—Return to sender, P.O. Box 2426, San Antonio, TX. 78298" (the P.O. Box Hughey had access to.)

e) The total losses on the 21 cards from unauthorized charges was $90,431.

2. 18 U.S.C. § 3579 and § 3580 have since been recodified at 18 U.S.C. §§ 3663 and 3664, respectively. However, the application of the statute as in force at the time of Hughey's sentencing is what is challenged. It is that version of the statute which we must apply. Hence, for the sake of clarity, we will refer throughout this opinion to §§ 3579 and 3580.

Hughey appeals the trial court's denial of his "Motion to Reduce Sentence and to Correct an Illegal Sentence" made under Fed.R.Crim.P. 35. In that motion he challenged the trial court's assessment of restitution as illegal under the VWPA. The trial court stated, when denying Hughey's motion in its order of October 7, 1987:

> The total loss in dollars caused to the issuing banks was $90,431. Although defendant Hughey did not himself benefit in that sum, the loss to the issuing banks in that amount was caused by the fact that he used the credit cards or caused them to be used. The Court finds that a preponderance of the evidence supports the award of restitution.

The court also stated that while it had considered Hughey's indigency, it was convinced that the award was appropriate.

## I. Restitution for Acts for Which the Defendant Was Not Convicted.

### A. *Standard of Review*

■ In reviewing the denial of a rule 35 motion, this Court will "examine only whether the sentence was illegal or whether the district court abused its discretion." *U.S. v. Kirkland,* 853 F.2d 1243, 1246 (5th Cir.1988). The legality of a criminal sentence is examined on a *de novo* basis. *See U.S. v. Pomazi,* 851 F.2d 244, 247 (9th Cir.1988). Because Hughey challenges the legality of his criminal sentence, we review *de novo.*

May a defendant, charged with multiple offenses, who pleads guilty to one offense be required to make restitution under the VWPA for acts of which he was not found guilty? This is the critical issue before us. We find statutory language, history, and case authority all support a trial court's authority to assess restitution under the VWPA in appropriate circumstances for losses beyond those attributable to the offense of conviction.

### B. *Statutory Language and History*

■ Section 3579 of the VWPA refers to "a defendant convicted of an offense" and "any victim of such offense." [3] Section 3580 refers to "the amount of the loss sustained by any victim as a result of the offense." [4] The difficulty here is that the term "offense" is not defined independently. Hence the statute is ambiguous, and we must give the term meaning.

The reference in § 3579 to "such offense" and the repeated references to "the" property by themselves admittedly point to a maximum restitution determined by the loss attributable only to the offense of conviction and "perhaps for the proposition that the charging instrument establishes the maximum amount of that loss."

**3.** The applicable sections of the VWPA were codified at 18 U.S.C. §§ 3579 and 3580. They were then amended twice, so that the relevant portions of § 3579 in force on April 2, 1987 (date of Hughey's sentencing) read as follows:

§ 3579. *Order of restitution*

(a)(1) The court, when sentencing a defendant convicted of an offense under this title ... may order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense....

(b) The order may require that such defendant—

(1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense—

(A) return the property to the owner of the property or someone designated by the owner; or

(B) if return of the property under subparagraph (A) is impossible, impractical, or inadequate, pay an amount equal to the greater of—

(i) the value of the property on the date of the damage, loss, or destruction, or

(ii) the value of the property on the date of sentencing, less the value (as of the date the property is returned) of any part of the property that is returned;....

18 U.S.C. § 3579 (1982 and Supp. IV 1986) Pub.L. 99–646, § 79(a) (1986), amended Subsection (a)(1), changing "the offense" to "such offense."

*See* 18 U.S.C. §§ 3579 (Supp. IV 1986).

**4.** § 3580. *Procedure for issuing order of restitution:*

(a). The court, in determining whether to order restitution under section 3579 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

*United States v. Berrios,* 869 F.2d 25, 28 (2nd Cir.1989).

Two procedural provisions of the VWPA, however, suggest a more open-ended application of the term "offense" was intended. Section 3580 provides that "the court, in determining ... the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense," and that it shall consider "such other factors as the court deems appropriate." 18 U.S.C. § 3580(a). It is obvious that the amount of loss may be more than that stated in the charging instrument. Therefore, at the minimum, the VWPA does not limit restitution to the amount specified in an indictment. Furthermore, the amount of loss is put forward as only one factor that the court must consider. The statute obviously gives a sentencing court some discretion in determining the proper restitutive amount. *See Berrios,* 869 F.2d at 29.

Section 3580(e) provides for estoppel in subsequent civil proceedings:

> A conviction of a defendant for an offense involving the act giving rise to restitution under this section shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding or State civil proceeding, to the extent consistent with State law, brought by the victim.

18 U.S.C. § 3580(e) (1982). If Congress had intended to limit the amount of restitution to that attributable to the offense of conviction, subsection (e) would not have needed to employ the phrase "for an offense involving the act giving rise to restitution" but instead could have simply stated "for an offense giving rise to restitution." The phrase "involving the act" would be useless surplusage if such a limited reading was intended. It is our duty to give effect to every clause and word of a statute, if possible. *See United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) (*quoting Montclair v. Ramsdell,* 107 U.S. 147, 152, 2 S.Ct. 391, 395, 27 L.Ed. 431 (1883)). In-

clusion of the phrase "involving the act" "implies that the acts for which restitution may be ordered must be related to the offense of which defendant is convicted, but that those acts may extend beyond the boundaries of the offense itself." *Berrios,* 869 F.2d at 29.

An analysis of the history of the VWPA further confirms a broader reading of the term "the offense." If "offense" was meant to be limited purely to the offense for which defendant is convicted, the VWPA could have been written as was the Federal Probation Act (FPA). The FPA provided that a defendant "[m]ay be required to make restitution ... to aggrieved parties for ... loss caused by the *offense for which conviction* was had." 18 U.S.C. § 3651 (1982) (repealed effective November 1, 1986, pursuant to § 235 of Pub.L. 98–473) (emphasis added). The VWPA contains no such limiting language. *United States v. Hill,* 798 F.2d 402, 405 (10th Cir. 1986); *see also Berrios,* 869 F.2d at 28–29.

Even under the more restrictive language of the FPA there was a division among the Circuit Courts on whether restitution was in fact limited to the amount charged in the indictment. *Compare United States v. McMichael,* 699 F.2d 193, 195 (4th Cir.1983) (allowing restitution outside of amount alleged in indictment, as long as it was an actual damage directly caused by illegal activity with which defendant was charged) *with United States v. Black,* 767 F.2d 1334, 1343 (9th Cir.), *cert. denied,* 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985) (limiting restitution to amounts alleged in indictment) and *United States v. Hawthorne,* 806 F.2d 493, 501 (3rd Cir. 1986) (restitution limited to losses attributable to offense of conviction). Congress must have been aware that such a limitation was placed on the FPA by some courts. Given the absence of any limiting language in the VWPA, it is reasonable to infer that Congress did not intend to limit victim compensation to the amount specified in the indictment. *Hill,* 798 F.2d at 405.[5]

---

5. This Court has explicitly held that district courts have the authority "to order a defendant to pay restitution in an amount greater than the loss alleged in the indictment." *United States v.*

Furthermore, it is clear from the legislative history of the VWPA that one of the principal purposes of the Act was to ensure that wrongdoers, to the degree possible, make their victims whole. *See* S.Rep. No. 532, 97th Cong., 2nd Sess. 30, *reprinted in* 1982 U.S.Code Cong. & Admin. News 2515, 2536–37. That such was a principal purpose of the VWPA has been repeatedly recognized by numerous appellate courts. *See United States v. Duncan*, 870 F.2d 1532, 1535 (10th Cir.1989); *Berrios*, 869 F.2d at 29–31; *United States v. Pomazi*, 851 F.2d 244, 248–49 (9th Cir.1988); *Hill*, 798 F.2d at 405–07; *United States v. Anglian*, 784 F.2d 765, 767–68 (6th Cir.), *cert. denied*, 479 U.S. 841, 107 S.Ct. 148, 93 L.Ed.2d 89 (1986).

Given the compensatory objectives of the VWPA, it is difficult to justify limiting restitution to either the particular counts or amounts charged in the indictment. It is important to note that a prosecutor's decision regarding the number of counts with which to charge a defendant is discretionary. Factors may figure into that determination which have little or nothing in common with the congressional objective of compensating crime victims. The decision as to which counts should be the subject of prosecution may be based upon office policy, the strategic use of certain criminal transactions as evidence, or evidentiary considerations geared to securing convictions based on a "beyond a reasonable doubt" standard. Usually of less immediate concern is the victims' financial loss, which is judged by the less onerous "preponderance of the evidence" standard.

Finally, if restitution were limited to the count of conviction, given the high levels of plea bargaining within our criminal system, in the majority of cases a victim could not be made whole. Congress was not unaware of the pervasive phenomenon of plea bargaining when it passed the VWPA. It is not persuasive to attribute Congress with its stated intent of providing for the full restitution of victims yet simultaneously

shaping the statute so that it could be rendered substantially nugatory through plea bargaining. *See Berrios*, 869 F.2d at 30. We therefore find that both the statutory language and history affirm a trial court's power to assess restitution for losses caused by offenses not charged in the indictment.

### C. Case Authority

Hughey's case presents a specific set of circumstances which are of first impression in this Circuit. It requires restitution under the VWPA for a loss greater than that attributable to the offense of conviction when: (1) the defendant was charged with multiple offenses, and the various counts are similar to each other; (2) the plea bargain was silent on the issue of restitution; (3) the defendant did not acknowledge the government's proposed restitutive figure as correct, but neither did he challenge the amount put forward; (4) each of the offenses which were not charged in the indictment but form the basis for the restitutive amount involved the same defendant, the same victim, and the same type of crime; (5) none of the counts, however, alleged a conspiracy or scheme.

Case authority in other circuits supports the broader interpretation of the term "offense" in circumstances such as Hughey's. Both the Second and Tenth Circuits have held that restitution under the VWPA is not limited to the offense of conviction in cases in which the factual circumstances closely parallel Hughey's. *Berrios*, 869 F.2d 25 (2nd Cir.1989); *United States v. Duncan*, 870 F.2d 1532 (10th Cir.1989). *See also United States v. Spambanato*, 876 F.2d 5 (2nd Cir.1989) (applying *Berrios* in parallel circumstances). In *Berrios* the defendant pleaded guilty to one count of mail theft and the other counts were dropped. The Second Circuit held beyond cavil that the district court had the authority to order Berrios to make restitution of the full amount of loss attributable to his

---

*Kirkland,* 853 F.2d 1243, 1250 (5th Cir.1988). *Kirkland* is not dispositive beyond its facts, however, because the restitutive amount was specifically addressed in the plea bargain to which the

defendant agreed. This is distinguishable from Hughey's case, because Hughey's plea bargain was silent on the issue of restitution.

related criminal course of conduct as long as he was forewarned such restitution might be ordered and he ·was given an opportunity to contest any allegations as to the amount of loss he was supposed to have caused. *Berrios*, 869 F.2d at 32.[6]

Similarly in *Duncan*, after an analysis of the language and purpose of the VWPA, the Court concluded:

[T]he VWPA does not restrict a sentencing judge to considering only those acts for which conviction was had, or for which the defendant pleaded guilty. The judge ordering restitution under the VWPA is free to look beyond the indictment to other acts committed by the defendant that caused a loss to the victim....

. . . .

... the VWPA does not prohibit an award of restitution based upon criminal activity that does not encompass the elements of the crime for which the defendant pleaded guilty, if there is a sufficient connection between such crimes.

We therefore hold that when there is evidence that the defendant committed other criminal acts that had a significant connection to the act for which conviction was had or for which a guilty plea was entered, a sentencing judge may order restitution for such losses resulting from such acts if the Government can prove both that the defendant caused such losses, and the amount of such losses, by a preponderance of the evidence.

*Duncan*, 870 F.2d at 1536–37.

Hughey argues that restitution for losses beyond those attributable to the offense of conviction may be ordered only if the offense of conviction involved either a conspiracy or a "scheme." In such circumstances, it is conceded that the non-convicting offenses may be considered part of or in furtherance of the offense of conviction. But, the rule the *Duncan* Court fashioned and then employed did not rely on the "scheme" rationale, although Duncan's offense of conviction was mail fraud, which has been found to involve a "scheme." *See United States v. Angelica*, 859 F.2d 1390 (9th Cir.1988); *United States v. Pomazi*, 851 F.2d 244, 249 (9th Cir.1988). *Duncan* did refer to a "scheme" but only to establish that the forgery of check endorsements was closely enough related to the mail fraud conviction to allow broader restitution:

Although the precise contours of the scope of "offense" under the VWPA must be determined under the facts of each case, *we interpret the VWPA to permit an order of restitution for losses incurred by the victim as a consequence of the defendant's criminal acts other than those for which a guilty plea was entered*, when there is a *significant connection* between those other criminal acts and the crime for which the guilty plea was entered.

*Duncan*, 870 F.2d at 1536 (emphasis added). As long as there is a *significant connection* between the crime of conviction and the other offense, there is no requirement that a conspiracy or scheme need be shown to justify restitution beyond the offense of conviction.

The Second Circuit held that the VWPA did not "limit the sentencing court's restitutionary [sic] authority to the amount specified in the charge on which the defendant is convicted where the victim of that offense also suffered other losses as a result of the defendant's related course of conduct." *Id.* at 32. The Court held that the amount of loss must "either be conceded by the defendant or be adjudicated by the court." *Id.* Thus even if the *Berrios* decision relied to some extent on Berrios' concessions, the rule as fashioned by the Court applies to cases such as Hughey's where the defendant is completely silent regarding the criminal acts alleged to have caused loss, and the court determines the amount of loss independently.

---

**6.** It might be argued that *Berrios* is distinguishable from the circumstances of Hughey's case because the *Berrios* Court found and relied in part on the fact that Berrios acknowledged guilt for the criminal acts of which he was not convicted. The Court made much of the fact that Berrios acknowledged responsibility for his victim's entire loss in order to receive a lenient sentence. *Berrios*, 869 F.2d at 32–33. While this is true, Berrios contended throughout the trial and appellate proceedings that although he had a "moral obligation" to repay the full amount, he did not concede liability for, nor agree to make restitution of, any amount higher than the sum charged in the information to which he pleaded guilty. *Id.* at 28.

Two other cases, while not duplicating Hughey's factual situation, support the trial court's order of restitution: *Hill*, 798 F.2d 402 (10th Cir.1986); *Pomazi*, 851 F.2d 244. The *Hill* court held:

[I]n determining the amount of loss to a victim for purposes of awarding restitution under the VWPA, a district court *is not limited either by the amount specified in the indictment or the specific transactions alleged in the indictment* . . . . [A] district court may order a defendant to pay restitution to any victim for the amount of loss sustained "as a result of the offense," 18 U.S.C. § 3580(a), so long as this amount is supported by a preponderance of the evidence.

*Hill*, 798 F.2d at 406 (emphasis added). *Hill* is distinguishable from the case at hand because the defense attorney acknowledged the accuracy of the court's restitutive amount and there was no plea bargain. Nevertheless, the court laid down the same broad rule which we employ in this case.

In *Pomazi*, the Ninth Circuit ordered restitution to numerous victims of the defendant's mail fraud scheme, although, pursuant to a plea bargain, the defendant was convicted of only two counts of mail fraud involving one victim. Hughey argues that *Pomazi* employs the scheme rationale because it only addresses cases in which "the crime charged involves a scheme to defraud" in its final holding, and hence it is not directly on point. *Id.* at 250. The broad rule and the logic it employs, however, provide strong support for the decision of the district court in this case.

Hughey urges as countervailing authority three cases: *United States v. Durham*, 755 F.2d 511 (6th Cir.1985); *United States v. Barnette*, 800 F.2d 1558 (11th Cir.1986), *cert. denied*, 480 U.S. 935, 107 S.Ct. 1578, 94 L.Ed.2d 769 (1987); and *United States v. Mischler*, 787 F.2d 240 (7th Cir.1986). In *Durham* the Sixth Circuit held restitution could only be ordered for the offense of conviction, a narrower reading of the term "offense" than the District Court employed in the case before us. The *Durham* court,

however, also held the term "victim" was intended to be interpreted broadly. Hence, the Sixth Circuit found that "Congress intended a 'victim' to be a person who suffered injury as a result of the defendant's actions that surrounded the commission of the offense, regardless of whether the actions are elements of the offense charged." *Durham*, 755 F.2d at 513. Durham pleaded guilty to bank robbery but challenged the court's authority to order restitution for arson which destroyed an automobile during the course of the robbery. Although Durham was not convicted of arson, because the arson was committed and the car destroyed during the course of his escape from the bank robbery, the insurer of the automobile was considered a victim of Durham's offense of conviction.

The Sixth Circuit employed similar logic in *United States v. Mounts*, 793 F.2d 125 (6th Cir.), *cert. denied*, 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986). Mounts pleaded guilty to one count of illegally receiving explosives. He was ordered to make restitution for the damage to a company whose safe he attempted to blow up and whose automobile he destroyed in his attempt to escape. The district court awarded restitution based on the losses related to the business equipment and the stolen automobile. As the Tenth Circuit pointed out in *Duncan*,

Although the Sixth Circuit purports to apply a restricted definition of "offense," [footnote omitted] we believe that the result in *Mounts* regarding restitution for damage to the stolen Corvette and for losses attributable to stolen business property is consistent with the definition of 'offense' applied in *Hill* and *Pomazi*. This result demonstrates that the VWPA does not prohibit an award of restitution based upon criminal activity that does not encompass the elements of the crime for which the defendant pleaded guilty, if there is a sufficient connection between such crimes.

*Duncan*, 870 F.2d at 1537. We agree with this interpretation of *Mounts* and *Durham*, believing (with the Tenth Circuit) that *Mounts* and *Durham* support our interpretation of the VWPA because the narrow

definition of "offense" was "effectively obliterated" by applying the broad definition of "victim." *Id.* at 1537 n. 2. To the extent that the narrow definition of "offense" might limit restitution under the VWPA, however, we decline to accept the reasoning of the Sixth Circuit.

Hughey's Eleventh Circuit case, *Barnette*, states that the amount of restitution under the VWPA and FPA "may not exceed the actual losses flowing from the offense for which the defendant has been convicted." *Barnette*, 800 F.2d at 1571–72. The *Barnette* Court, however, applied its holding to both the FPA and the VWPA in its two paragraph consideration of the issue, and did not cite any VWPA case as authority. It did not address the VWPA provisions separately. Given the differences between the two acts, we find *Barnette* not clearly in point.

Finally, the Seventh Circuit case cited, *Mischler*, 787 F.2d 240, is not applicable to the facts of our case. The trial court was held to have abused its discretion in ordering broad scale restitution for all counts of the indictment. The Mischlers, unlike Hughey, challenged the factual accuracy of the restitutive amount assessed, but were not given an opportunity to elaborate the basis for their challenge. The district judge was also found not to have relied on accurate information in determining the restitution. No such inaccuracy of calculation has been shown or alleged by Hughey.

A stronger case for Hughey's position from the Seventh Circuit is *United States v. Paul*, 783 F.2d 84 (7th Cir.1986). Paul pleaded guilty to embezzlement and was ordered to make restitution of a greater amount than she had admitted to having embezzled. She failed to object to the computation of the amount of restitution at the time of sentencing (unlike the Mischlers). *Paul* held, however, that when imposing restitution greater than that charged in the relevant count, the defendant must obtain the proceeds "as part of an ongoing scheme to defraud which extends over time, and ... the amount of damages to the victim [must be] established with specificity and [be] admitted to by the defendant

in the indictment, the plea agreement and presentence proceedings." *Paul*, 783 F.2d at 88. This rule was first enunciated in *United States v. Davies*, 683 F.2d 1052, 1054 (7th Cir.1982). The *Paul* Court explicitly concluded that:

> [T]he government's interest in leaving the precise amount of restitution undetermined until the sentencing stage is very slight.... [T]he interests of due process and fairness to the defendant require that the government satisfy the *Davies* test at the plea bargaining stage before an amount of restitution greater than that charged can be ordered.

*Paul*, 783 F.2d at 89. To the extent that the *Davies* test, as employed in *Paul*, would prevent a district court from ordering restitution under the VWPA greater than that charged in the indictment, we find it would cripple proper application of the VWPA.

We conclude that the VWPA permits a court to require restitution beyond that amount involved in the offense of conviction when there is a significant connection between the crime of conviction and similar actions justifying restitution. This is the law also of the Second, Ninth, and Tenth Circuits as seen in *Berrios, Pomazi* and *Duncan,* respectively. We do not need in the case before us further to define at this time what constitutes a "significant connection" between the offenses of indictment or conviction and those additional acts for which restitution was ordered. In this case, the nexus is strong. Here the restitution order involved the same defendant, the same victim, and multiple identical criminal offenses.

## II. Standard of Proof and Sentencing Procedure

■ Hughey argues that imposition of restitution pursuant to the VWPA imposes "criminal responsibility" for the offenses which form the basis of the restitutive order. Hence, he maintains that the preponderance of the evidence standard is inapplicable and that he must be found guilty of these offenses under the criminal standard of "beyond a reasonable doubt."

This argument is made without citation to any authority and misconstrues the purpose of the VWPA. The purpose of the Act is restitutive, and restitution is assessed as part of sentencing. It is not a finding of "criminal responsibility." The VWPA clearly provides for a preponderance of the evidence standard of proof. 18 U.S.C. § 3580(d).[7]

Hughey's standard of proof argument, however, does raise the issue of what procedural safeguards are required before restitution can be imposed for offenses which are not the basis of a conviction. Under the VWPA a court may order restitution to any victim, § 3579, based on information gathered and furnished by the probation service, § 3580. Pursuant to Rule 32 of Fed.R.Crim.P., the presentence report furnished by the probation service must contain information about the financial harm or loss suffered by any victim. That report must be timely disclosed to the defendant who may challenge any factual inaccuracy it contains. *United States v. Patterson,* 837 F.2d 182, 183 (5th Cir.1988). In addition, the defendant must be forewarned that restitution may be ordered in an amount higher than the crime of conviction, and he must be given an opportunity to contest any allegation as to the amount of loss he has supposed to have caused. *United States v. Corn,* 836 F.2d 889, 893–94 (5th Cir.1988); *Berrios,* 869 F.2d at 32; *Mischler,* 787 F.2d at 246–47. *See also* Fed.R.Crim.P. 11(c)(1). However, "nothing in the text or legislative history of the VWPA [indicates] that Congress intended the sentencing hearing to be transformed into a second trial on the issue of restitution." *United States v. Cloud,* 872 F.2d 846 (9th Cir.1988).

■ Hughey was notified ahead of time that the broader restitution would be sought. His attorney briefed these issues

well in presentence hearings. Hughey was not the victim of any unfair surprise. The government bears the burden of proving the amount of loss sustained by the victim, but the burden of demonstrating the defendant's lack of financial resources is upon him. § 3580(d). The government in this case came forward with proffered testimony for the purpose of proving the amount of financial loss for which Hughey was responsible. Hughey stipulated that this testimony was admissible, and while he did not admit that any of it was true, neither did he dispute the accuracy of the calculation of the amounts proposed. Given the testimony, the government clearly met its burden of proving the losses by the preponderance of the evidence. The burden then shifted to the defendant to challenge that estimate of loss. He did not do so. It is unacceptable for a defendant to be able to agree to a plea bargain and then by maintaining his silence, thwart the VWPA's restitutive purpose in the face of persuasive evidence of losses he has caused.

In the absence of any challenge to the accuracy of the district court's assessment, we need not further explore any constitutional claim on this ground. *Durham,* 755 F.2d at 514.

## III. Defendant's Financial Resources

Finally, Hughey argues that the court did not properly assess his indigency, and that it did not give adequate consideration to a "compromise" figure which he proposed for restitution. In failing to do so, he urges, the court did not build an adequate record for consideration upon appeal. These claims can be refuted with brevity.

■ First, the Act states that the sentencing court shall consider the amount of loss sustained by any victim, the financial resources of the defendant, his financial needs and earning ability, the needs of his

---

7. 18 U.S.C. § 3580(d) (1982) provides:
   Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. The burden of demonstrating the financial

resources of the defendant and the financial needs of the defendant and such defendant's dependents shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.

dependents, "and such other factors as the court deems appropriate." 18 U.S.C. § 3580(a). The defendant's financial resources are only one factor to be considered in a nonexhaustive list provided by the statute.[8] Another factor which may be considered is the culpability of the defendant. *United States v. Anglian*, 784 F.2d 765, 768 (6th Cir.), *cert. denied*, 479 U.S. 841, 107 S.Ct. 148, 93 L.Ed.2d 89 (1986). We have recently held that indigency does not bar a restitutive award under the VWPA. *United States v. Ryan*, 874 F.2d 1052, 1054–55 (5th Cir.1989). *See also Mounts*, 793 F.2d at 128. Furthermore, the trial judge had Hughey's financial information at his disposal, and stated that he had examined it. This demonstrates sufficient consideration of the statutory factor. *United States v. Atkinson*, 788 F.2d 900, 902 (2nd Cir.1986).

■ Hughey offered to pay for all losses attributable to the Godfrey credit card, the credit card used in the offense to which he pleaded guilty. The district court, however, required him to make restitution in full for all offenses for which the government offered proof as against the same victim, the bank. The VWPA provides that "[i]f the court does not order restitution, or orders only partial restitution under this section, the court shall state on the record the reasons therefore." 18 U.S.C. § 3579(a)(2). There is no mention in the statute of any requirement that a court must also state on the record reasons for ordering full restitution. It is apparent from the statute that restitution in full is to be considered the norm. Restitution in part is a deviation from that norm and requires an explanation in the record. Nevertheless, *Hughey* argues that explicit factual findings should have been made by the district court in reference to his compromise offer.

We have recently held that:

> The decision to assign reasons is committed to the sound discretion of the district court, guided by this singular inquiry—absent an assignment of its reasons, does the record contain sufficient data for the appellate court to perform its mandated review? If the record provides an adequate basis for that review, the court need not assign specific reasons for its decision to order full restitution. If the record is insufficient, reasons must be assigned.

*Patterson*, 837 F.2d at 183–84. The record in this case contains a presentence investigation report by the United States Probation Office, which detailed the defendant's financial resources. Coupled with the district court's detailed order (which denied the defendant's Rule 35 motion) and the government's offer of proof, an adequate record on which to review this case was provided. *See Ryan*, at 1054. Given the record in this case, there was no need for an explicit finding by the district court regarding the compromise offer. *Patterson*, 837 F.2d at 184. *See also United States v. Cannizzarro*, 871 F.2d 809, 810–11 (9th Cir.1989). The defendant's assertion that there is not an adequate record for this Court to perform its appellate review is without merit.

### Conclusion

Hughey's guilty plea to the one offense of misuse of a credit card, in conjunction with the government's offer of proof, formed a sufficient basis for the district court to order restitution. The restitution order properly exceeded the amount involved in the offense for which conviction was obtained since the restitution ordered had a "significant connection" with the conviction offense. The proper standard of proof was employed by the district court, and there was a sufficient record upon which to base the order of restitution. The

---

**8.** 18 U.S.C. § 3580(a) (1982) provides:
The court, in determining whether to order restitution under section 3579 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

district court's denial of Hughey's rule 35 motion must be affirmed.

AFFIRMED.