**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Randall DURHAM,
Defendant-Appellant.**

No. 84–5500.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 10, 1985.

Decided March 1, 1985.

Allen W. Holbrook, Federal Public Defender, Lexington, Ky., for defendant-appellant.

Louis DeFalaise, U.S. Atty. (argued), R. Michael Murphy, Lexington, Ky., for plaintiff-appellee.

Before MARTIN and KRUPANSKY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

James Randall Durham appeals the district court's denial of his motion to be relieved from an illegal sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure. After accepting Durham's guilty plea to a charge of bank robbery, the trial judge imposed a prison sentence and ordered Durham to pay $14,087.81 to the Westfield Insurance Company and $1,971.00 to the Cumberland Valley National Bank of London, Kentucky pursuant to the restitution provisions of the Victim and Witness Protection Act, 18 U.S.C. §§ 3579, 3580. Durham's Rule 35 motion claimed that the restitution order violated the terms of the Act and that, if the restitution was proper under the Act, the Act is unconstitutional. The district court denied relief and Durham appealed.

The Victim and Witness Protection Act provides in part:

> The court, when sentencing a defendant convicted of an offense under this title ... may order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense.

18 U.S.C. § 3579(a)(1). Durham argues that neither Westfield nor Cumberland Valley is a "victim of the offense" within the meaning of section 3579(a)(1). Westfield is the insurer of an automobile that Durham and another person destroyed by arson during the course of the robbery. Durham argues that Westfield is not a "victim of the offense" because the information did not charge him with arson and his plea agreement made no mention of Westfield, the automobile, or arson. Cumberland Valley is the bank that Durham robbed, and Durham was ordered to reimburse the bank for its unrecovered losses. Durham argues that neither Cumberland Valley nor Westfield is a "victim of the offense" because the Act was intended to apply only to human victims.

Durham also claims that the Act violates the seventh amendment because it in effect imposes a civil judgment without guaranteeing the right to a jury trial and violates the fifth amendment due process guarantee because the Act does not by its terms provide for discovery or cross-examination. Finally, Durham argues that the court failed to consider his financial condition as required by the Act, 18 U.S.C. § 3580(a), and that the court made no finding whether Cumberland Valley had been reimbursed by a third party, as required by the Act, 18 U.S.C. § 3579(e)(1).[1]

Nowhere in the Act is the term "victim" or "offense" defined. Nevertheless, we are not without guidance in attempting to discover Congress' meaning. Initially, section 3579(a)(1) provides for restitution to a victim of "the offense." A natural construction of this language would require that the defendant make restitution only to victims of the offense for which he was convicted. Nothing in the statute or the legislative history requires a contrary reading.

The more difficult question is to determine who is a "victim" of the offense. We

---

believe that Congress intended "victim" to be interpreted very broadly. Section 3579(a)(1) permits restitution to *"any victim* of the offense." (emphasis added). The expansive definition suggested by this language is supported by other provisions of the Act that make clear that Congress intended the definition to reach "indirect" victims such as Westfield as well as "direct" victims, such as Cumberland Valley.

Section 3579(b)(1) specifies the restitution that may be ordered "in the case of an offense *resulting in* damage to or loss or destruction of property of a victim of the offense." (emphasis added). Similarly, section 3580(a) requires that the court consider "the amount of the loss sustained by any victim *as a result of* the offense...." (emphasis added). *See also* 18 U.S.C. § 3579(b)(2), (b)(3). This language clearly indicates that Congress intended restitution to be awarded to persons who suffered injury "as a result of" the offense. The remaining question is whether Congress intended a "victim" to be a person who suffered injury as a result of actions that are necessary elements of the offense charged, or whether Congress intended a "victim" to be a person who suffered injury as a result of the defendant's actions that surrounded the commission of the offense, regardless of whether the actions are elements of the offense charged. We believe Congress intended the latter definition.

Section 3580(e) provides that a defendant may be subject to collateral estoppel in a subsequent civil action brought by a victim if the "offense involv[ed] the act giving rise to restitution under this section...." Thus, Congress drew a distinction between offenses that involve the act giving rise to restitution and offenses that do not involve the act giving rise to restitution. If Congress created such a distinction, Congress clearly meant to provide restitution in some cases in which a person was injured by an act that was not an element of the offense. This interpretation is supported by the Senate Report that accompanied the bill, which indicates that Congress meant to allow restitution to an injured bank teller when the crime charged was bank robbery and not a crime against the teller:

> The Committee intends that the victim impact statement be used in all crimes where there is a human victim. But even in cases where the crime is legally perpetrated against an institution, such as a bank, and there is a human victim such as a bank teller, a victim impact statement should be prepared. The Committee also notes that the definition of victims is purposely broad to include other "indirect" victims such as family members of homicide victims.

S.Rep. No. 532, 97th Cong., 2d Sess. 13, *reprinted in* 1982 U.S.Code Cong. & Ad. News 2515, 2519.

■ We do not find it necessary at this point to delineate the exact contours of the definition of a "victim." That task should await further experience under the Act. For now it is sufficient to note that however narrow the definition, it is broad enough to include Westfield. The automobile was burned during the course of Durham's getaway from the scene of the bank robbery. The destruction of the automobile certainly may be said to have been the "result of" the bank robbery. Westfield, the insurer of the automobile, is therefore a victim of the bank robbery. ·

■ Next, Durham claims that non-human entities are categorically excluded from the definition of a "victim." Nothing in the statute or its legislative history supports that claim. In fact, the Senate Report indicates that one purpose of the Act is to remedy undesirable situations in which "insurance companies and the insurance buying public are being asked to pay off the offender's debt." S.Rep. No. 532, 97th Cong., 2d Sess. 31, *reprinted in* 1982 U.S.Code Cong. & Ad.News 2515, 2537. Moreover, several courts have upheld restitution awards to non-human entities under the Act. *See United States v. Florence,* 741 F.2d 1066 (8th Cir.1984); *United States v. Dudley,* 739 F.2d 175 (4th Cir.1984); *United States v. Richard,* 738 F.2d 1120 (10th Cir.1984). We conclude that a non-

human entity may be a victim of the offense within the meaning of the Act.

That brings us to Durham's constitutional challenges. Several courts have upheld the constitutionality of the Act against claims that it ran afoul of the seventh and fifth amendments. *See United States v. Watchman,* 749 F.2d 616 (10th Cir.1984) (seventh amendment); *United States v. Brown,* 744 F.2d 905 (2d Cir.1984) (seventh amendment); *United States v. Satterfield,* 743 F.2d 827 (11th Cir.1984) (seventh and fifth amendments); *United States v. Florence,* 741 F.2d 1066 (8th Cir.1984) (seventh and fifth amendments). In those cases, however, the facts that gave rise to the restitution order were either elements of the offense charged or were fully adjudicated during the course of the trial leading to the defendant's conviction. By contrast, Durham pleaded guilty to a charge of bank robbery, not arson of an automobile, so the facts that gave rise to the restitution order, at least with respect to Westfield, were neither admitted by Durham through the guilty plea nor fully adjudicated during a trial. The only evidence that Durham burned the auto is hearsay statements contained in the pre-sentence report relied upon by the sentencing judge. The absence of an effective admission or full adjudication of the fact of injury, as opposed to the extent of injury, may put Durham's claims on different constitutional footing than those advanced in *Watchman, Brown, Satterfield,* and *Florence.*

■ Nevertheless, we do not believe that this is the appropriate case in which to resolve these constitutional questions. A review of the record indicates that at no point in the proceedings in the district court or on appeal has Durham claimed that he did not, in fact, burn the automobile. Durham also has not challenged the accuracy of the district court's determination of the value of the auto. The absence of challenges to the district court's determinations of fact precludes the constitutional challenges made by Durham.

■ Durham claims that the seventh amendment entitles him to a jury determination of the issue of restitution. He also claims that due process entitles him to discovery and cross-examination. The purpose of the procedural devices Durham seeks—jury trial, discovery, and cross-examination—is to enhance the accuracy of factual determinations. Where the claimant does not dispute the accuracy of any factual finding, invocation of jury trial and due process guarantees is not proper. In declining to entertain the same seventh and fifth amendment challenges now pressed by Durham, the Fourth Circuit stated:

[A]s things stand at present, there is no issue of fact to be resolved, no function for a jury to perform. Consequently, no question of application of the Seventh Amendment is extant.

. . . . .

As with the Seventh Amendment concerns ... we may save the novel issue [of application of the fifth amendment], too, for another day, in light of the absence of efforts to contest the accuracy of the amount of the restitution ordered.

*United States v. Dudley,* 739 F.2d 175, 179 (4th Cir.1984). We follow the wise course suggested by the Fourth Circuit and decline to address the constitutional issues.

■ Finally, Durham argues that the court failed to consider his financial condition and to make a finding whether Cumberland Valley had been reimbursed by a third party. Section 3580(a) provides:

The court, in determining whether to order restitution under section 3579 of this title and the amount of such restitution, *shall consider* ... the financial resources of the defendant, the financial need and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate. (emphasis added).

Section 3579(e)(1) provides:

The court *shall not* impose restitution with respect to a loss for which the victim has received or is to receive compensation.... (emphasis added).

The record of the sentencing hearing is devoid of any indication that the trial court

considered Durham's financial condition. The trial court also failed to make a finding with respect to whether Cumberland Valley, a federally insured bank, "has received or is to receive compensation" for its unrecovered losses. These duties are clearly mandated by the statute, and we will remand this case to permit the district court to develop a complete record.

Durham's other contentions are without merit.

The case is remanded to the district court.