UNITED STATES of America,
Plaintiff-Appellee,

v.

Wayne Randell ANGLIAN,
Defendant-Appellant.

No. 85–5381.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 9, 1986.

Decided March 5, 1986.

Rehearing Denied April 17, 1986.

William D. Stark, Jr. (argued), Barbourville, Ky. (Court-appointed), for defendant-appellant.

Louis DeFalaise, U.S. Atty., Lexington, Ky., R. Michael Murphy, Fred A. Stine (argued), for plaintiff-appellee.

Before MERRITT, JONES and NELSON, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

The primary dispute on this appeal concerns the standards that govern an order of restitution for co-conspirators under the

Victim and Witness Protection Act of 1982 (the "VWPA"). 18 U.S.C. §§ 3579, 3580 (1982). Appellant Wayne Anglian challenges a sentencing order that requires him to pay a proportionately greater share in restitution than all but one of his co-defendants. Anglian also asserts that his confession, entered into evidence against him, was not voluntary and should not have been admitted. We affirm.

## I.

Section 3579 of the VWPA permits a trial court, as part of the sentencing process, to order that a convicted defendant "make restitution to any victim of the offense." 18 U.S.C. § 3579(a)(1). In cases involving a loss of property, the defendant may be ordered to pay an amount equal to the value of the loss less the value of any property returned, § 3579(b)(1), and less any amount for which the victim has otherwise been compensated. 18 U.S.C. § 3579(e)(1). Restitution, if ordered, is made a condition of probation or parole. 18 U.S.C. § 3579(g). Section 3580 states that, in determining the amount of restitution to be ordered, the court—

> shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3580(a). The burden of demonstrating the victim's loss is placed on the government; the defendant has the burden of demonstrating his resources and financial needs. 18 U.S.C. § 3580(d). Factual disputes concerning the amount or type of restitution are to be resolved by the court by the preponderance of the evidence. *Id.* With this statutory background we now examine the sentencing proceedings that occurred in the trial court.

Anglian was convicted of conspiracy and on two substantive counts of receipt of stolen postal money orders in violation of 18 U.S.C. §§ 371 and 500. The evidence showed that Anglian and co-defendant Johnny Ray Ward received some one hundred postal money orders from a person who had stolen and stamped them in various amounts. Anglian and Ward, along with seven or eight friends, then went on a cashing spree across several states. The money orders were exchanged one at a time at retail stores for cash or merchandise, the transactions usually being performed by the female members of the group. Eight people including Anglian were indicted on the conspiracy count under 18 U.S.C. § 371. Five pled guilty, Anglian and another were convicted on a jury verdict, and the eighth was tried separately. The indictment also contained thirty-six counts of substantive violations of 18 U.S.C. § 500 involving $7,912.98 worth of money orders. Anglian was named in and convicted on two of the counts.

The district court held a sentencing hearing for the seven convicted defendants at which restitution was ordered. The court first determined that, despite the fact that the indictment only specified approximately $8,000 of illegal transactions, a total of $15,903.36 was lost by the victims as a result of the offense. *See* 18 U.S.C. §§ 3579(b)(1), 3580(a); *see also United States v. Durham,* 755 F.2d 511, 513 (6th Cir.1985) (restitution not limited to loss from acts resulting from necessary elements of offense charged). The court found that one defendant had repaid $3,254.08 to some victims, leaving an unpaid loss of $12,649.28. *See* U.S.C. §§ 3579(b)(1), (e)(1).

The court received evidence regarding and considered each defendant's financial resources and the earning ability of each defendant and the defendant's dependents. *See* 18 U.S.C. § 3580(a). The court also considered the "degree of responsibility that we have in this case," Tr. of Suppression Hearing at 49, and found that, due to their age and prior criminal records, the two older defendants, Anglian and Johnny Ward, "had a great deal of influence upon the younger ones in the group," and had "the primary responsibility" for the offense. *Id.* Based on these findings, the

court ordered that Anglian and Ward each pay one fourth of the unpaid loss, or $3,162.32. The defendant who had already made restitution was exempted from further payment. The remaining $6,324.64 was divided into seven parts, one for each of the five remaining defendants named in the indictment and one for each of two unindicted co-conspirators—a juvenile and the person who stole the money orders. Thus, each of the other convicted defendants was ordered to pay $903.52.

Anglian first asserts that the restitution order is improper because the two substantive counts on which he was indicted involved only $626.30 or, alternately, because the proof showed that all co-conspirators shared equally in the proceeds. Essentially, Anglian argues that restitution must be limited to the amount of benefit he received from the offense charged. Since the government proved only that he received $600 or, at most, a pro rata share of the whole, he can only be ordered to repay what he received.

■ It is true that, in the civil context, especially under the doctrine of unjust enrichment, restitution is sometimes measured by the benefit received. *See Restatement (Second) of Restitution* § 1 (Tent. Draft No. 1, 1983). We think it is unmistakable from the tenor of these statutes and from the legislative history, however, that Congress did not intend the term "restitution" as used in the VWPA to be so construed. To demonstrate this, it may be enough to note that the statute authorizes restitution to pay a victim's medical expenses, lost income, or funeral expenses in cases involving bodily injury or death. Clearly such restitution orders could bear no relation to the benefit a defendant might have received in causing such injuries. In a case involving only property losses, this court in *Durham* upheld restitution to a victim whose automobile was destroyed during the course of a bank robbery. 755 F.2d at 512–13. Again, such an order could not have been measured by the benefit received by the defendant. Other provisions show further that the purpose of

restitution is to make the victim whole. *See* § 3579(e)(1) (Restitution is not to be ordered if the victim has been otherwise compensated.); § 3579(e)(2) (Any restitution paid is to be set off against any later civil judgment.); § 3580(a) (The amount of loss sustained by the victim is the first of the factors the court must consider in making its order.). Nowhere in these statutes is the benefit gained by the defendant mentioned as a factor. The only limitations placed on an order of full compensation are that "the imposition of such order [must] not unduly complicate or prolong the sentencing process," § 3579(d), and that the defendant's ability to pay must be considered, § 3580(a). In crimes involving money, unconfiscated gains may, as a practical matter, increase the defendant's financial resources, but there is no basis for ruling that the extent of those gains should be the extent of the restitution order.

The legislative history leads to the same conclusion. The Senate Report that accompanied this legislation stated:

> The principle of restitution is an integral part of virtually every formal system of criminal justice, of every culture and every time. It holds that, whatever else the sanctioning power of society does to punish its wrongdoers, it should also insure that the wrongdoer is required to the degree possible to restore the victim to his or her prior state of well-being.

S.Rep. No. 532, 97th Cong., 2d Sess. 30, *reprinted in* 1982 U.S. Code Cong. & Ad. News 2515, 2536. The report went on to describe the testimony of one woman who "was the victim of a purse snatching as a result of which she also suffered a broken hip." *Id.* The woman incurred over $10,-000 in medical expenses and, due to her financial condition, was forced to forego rehabilitative surgery, but only $350 in restitution was ordered. *Id.* at 2536–37. If Congress had intended to remedy such a case with this legislation, we think it could not have intended to provide that a purse snatcher's liability for restitution be limited to the benefit he received from the con-

tents of the purse. No more should a conspirator's restitution liability be limited to the amount of benefit he received from the fruits of the conspiracy.

 Anglian next argues that the restitution order violates his constitutional right to equal protection because he is forced to pay more than most of his co-defendants. A restitution order is in the nature of a sentence, and the district court is "vested with wide discretion" in determining the appropriate sentence for a convicted defendant. *Williams v. Illinois*, 399 U.S. 235, 243, 90 S.Ct. 2018, 2023, 26 L.Ed.2d 586 (1970); *United States v. Palma*, 760 F.2d 475, 478 (3d Cir.1985); *United States v. Satterfield*, 743 F.2d 827, 841 (11th Cir.1984), *cert. denied*, ── U.S. ──, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985). The Constitution does not require identical sentences for persons convicted of the same offense. *Williams*, 399 U.S. at 243, 90 S.Ct. at 2023; *Palma*, 760 F.2d at 478; *Satterfield*, 743 F.2d at 841. As the courts of appeals in these cases have noted, some disparity in restitution orders is inevitable under this statute, for it requires the court to consider each defendant's individual financial needs and resources. *See* 18 U.S.C. § 3580(a); *Palma*, 760 F.2d at 479; *Satterfield*, 743 F.2d at 841. Anglian argues that the court abused its discretion nonetheless by basing its order, in part, on the relative culpability of the defendants.

 Relative degree of responsibility is not listed as a factor for consideration in the statutes. They make no provision for the treatment of multiple defendants. Section 3580(a), however, permits the court to consider "such other factors as the court deems appropriate." In considering restitution orders for multiple co-conspirators, we can think of perhaps no "other factor" that would be more appropriate than the relative culpability of the defendants. Despite the emphasis on compensating the victim, restitution is clearly a component of punishment, and, as the Supreme Court has observed, "the punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949). The Ninth Circuit quoted this statement in noting that "the concept of individualized sentencing is firmly entrenched in our present jurisprudence." *United States v. Barker*, 771 F.2d 1362, 1365, 1367 (9th Cir.1985) (reversing an incarceration order that gave all co-conspirators the maximum sentence without regard to relative culpability). We hold that it was proper for the court below to consider degrees of responsibility, along with the other factors listed in section 3580(a), and that the resulting restitution order was not an abuse of discretion. We emphasize, however, that this opinion should not be read as requiring the consideration of relative culpability in making every restitution order. While we hold that this is an appropriate factor in this case, we do not hold that it is always a *necessary* factor.

Finally, Anglian assails the order because he, unlike most of the other defendants, was ordered incarcerated as part of his sentence and will not have an opportunity to earn the money needed to make restitution in order to gain parole. While the statute, and the trial court's order, state that payment of restitution "shall be a condition of ... parole," 18 U.S.C. § 3579(g), we do not read this as meaning that it is a condition of *obtaining* parole. Rather, it appears to be a condition of *retaining* parole once granted. The statute provides procedures for reconsideration if the defendant is unable to make the required payments. *Id.* If Anglian's rights are later infringed despite these procedures, that claim will properly be the subject of a subsequent action. The issue of parole is not now before us.

## II.

Anglian also assails the admission at trial of an inculpatory statement made by him to postal inspectors. Prior to his indictment, Anglian had been served with a grand jury subpoena to provide fingerprints and handwriting exemplars. The subpoena had been issued by a United States Attorney. To avoid the necessity of

travelling out of town to appear before the grand jury, Anglian was permitted to comply with the subpoena at a local state police post. While he was at the post, he became upset with the length of time the process, especially the completion of numerous handwriting exemplars, was taking. He was told by the postal inspectors that he was not under arrest and was free to leave but that, if he did not fulfill the subpoena requirements then, he would still have to appear before the grand jury. Anglian left the building at least once, but, as he was there with his wife and Johnny Ward, his brother-in-law, who were also complying with subpoenas, he never departed the grounds entirely. At the end of the morning, apparently at the urging of Ward, Anglian volunteered to make a statement about the money order transactions. He did not request a lawyer and was read his *Miranda* rights although he was not in custody. Anglian discussed the affair with postal inspectors and then made a written statement. The statement form also contained the *Miranda* warnings, which Anglian signed. He told the inspectors that he was familiar with his rights from previous police encounters and recited them at the suppression hearing. The statement was later read to the jury in redacted form.

■ We see no grounds on which to overturn the trial court's conclusion that the statement was made voluntarily. Anglian's main arguments were that he subjectively believed that the grand jury subpoena required him to make the statement, that he did not understand that he could not be compelled to speak, and that he believed the statement was to be used against other defendants but not against himself. The trial court found that these assertions were belied by the plain words of the subpoena and the statement and by Anglian's admitted understanding of his rights. We agree.

■ Anglian also argues that the statement is tainted by an improper use of a grand jury subpoena in that no grand jury

existed before which he could have appeared if he had not complied with the subpoena informally. This court has held that a United States Attorney may properly issue a grand jury subpoena without prior direction from the grand jury and that investigators may suggest voluntary compliance as an alternative to a formal appearance. *See United States v. Smith,* 687 F.2d 147, 152 (6th Cir.1982), *cert. denied,* 459 U.S. 1116, 103 S.Ct. 752, 74 L.Ed.2d 970 (1983); *see also United States v. Santucci,* 674 F.2d 624, 632 (7th Cir. 1982), *cert. denied,* 459 U.S. 1109, 103 S.Ct. 737, 74 L.Ed.2d 959 (1983). We indicated in *Smith,* however, that some involvement of the grand jury is necessary. 687 F.2d at 152 n.2 (distinguishing *Santucci,* and cases where no grand jury was in session). There was a factual dispute in this case, unresolved by the trial court, about whether a grand jury was, in fact, in session. Even assuming that the subpoena, and thus the production of fingerprints and handwriting exemplars, was invalid, however, we see no way in which the statement, otherwise voluntarily made, was thereby tainted. The subpoena did not require testimony, and clear and understood warnings were given before the statement was made. There was an insufficient nexus, we think, between the subpoena and the statements for the illegality of one to affect the other. *See Santucci,* 674 F.2d at 632–33.

AFFIRMED.

MERRITT, Circuit Judge, concurring.

While the Court acknowledges that, in order to establish liability in restitution, the civil law normally requires a benefit received of some sort as well as a loss sustained, the Court nevertheless holds that "it is unmistakable from the tenor of these statutes ... that Congress did not intend the term 'restitution' as used in the [Victim and Witness Protection Act of 1982] to be so construed." The Court cites the fact that the statute allows compensation for

770

the victim's "medical expenses, lost income, or funeral expenses" as authority for its interpretation of the statute. The Court reads into the statute a broad tort concept of compensation for damages rather than applying a restitutionary concept.

I would hold that in ordering "restitution" under the statute, the sentencing court is limited by general concepts of restitution as previously developed in equity and in common law, rather than tort principles of compensation.

In the instant case, as the District Court noted, the defendant himself actually acquired approximately $16,000 worth of stolen checks and parceled them out to his co-conspirators for cashing. The conspiratorial group received the money. The defendant was the leader of the group, and the others were acting as agents of the enterprise. Under these circumstances, the District Court was correct in concluding that general principles of restitution would allow the proceeds of the checks received by the defendant's enterprise to be considered as benefits received by him. *Cf. Mosser v. Darrow,* 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951) (benefits obtained by agents of trustee at expense of trust estate are attributable to trustee); G. Palmer, The Law of Restitution § 2.11 at 141–42 (1978). The case fits within established principles of restitution, and there is no need to use broader tort concepts.

The fact that the statute allows compensation for the victim's medical and other similar expenses does not mean that such damages may be awarded when they do not fit within general principles of restitution. Congress consistently used the word "restitution" throughout the statute. The members of the Judiciary Committees of both houses of Congress, as well as their staffs, are lawyers trained in the common law tradition. They understood, in my opinion, that the word "restitution" has a historical meaning different from tort, and I would maintain this distinction when interpreting the statute.