UNITED STATES of America,
Plaintiff–Appellee,

v.

Evan MILLER (88–2272) and Jonathan
Miller (89–1129),
Defendants–Appellants.

Nos. 88–2272, 89–1129.

United States Court of Appeals,
Sixth Circuit.

Submitted Jan. 18, 1990.

Decided April 9, 1990.

F. William Soisson, Blondell Morey, Asst. U.S. Atty., Craig A. Weier, Office of the U.S. Atty., Detroit, Mich., for plaintiff-appellee.

Evan Miller, pro se.

Jonathan Miller, pro se.

Alan Ellis, Peter Goldberger (argued), Philadelphia, Pa., for petitioner-appellant.

Before KENNEDY and GUY, Circuit Judges, and ENGEL, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Defendants appeal from sentences of incarceration and restitution imposed after each pled guilty to two counts of mail fraud. They assert that the restitution or-dered violated their plea agreements as well as the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3579 and 3580, and was imposed without adequate notice. We AFFIRM the incarceration portion of the sentence but REVERSE the restitution provisions and REMAND to the District Court for resentencing in accordance with this opinion.

Defendants Evan Miller and his brother Jonathan, Michigan attorneys, were indicted on multiple counts of conspiracy, bankruptcy fraud, mail fraud, and obstruction of justice. Jonathan Miller was additionally charged with bank fraud, fraudulent use of a social security number, and credit card fraud. Most of these charges grew out of a series of incidents in which the brothers defrauded numerous clients of large sums of money. Each brother pled guilty to two counts of mail fraud, 18 U.S.C. § 1341, pursuant to a plea agreement. The remaining counts were dismissed. The plea agreements were silent on the issue of restitution but did provide for a maximum prison sentence of five years and a maximum term of probation of five years. The plea agreements stated that the parties had reached no agreement on the maximum fine that could be imposed by the court. Section 3571 of Title 18 provides for a fine of up to $250,000 on each count. At the time of plea, defendants acknowledged that they were subject to fines in that amount.

The District Court sentenced each defendant to five years in prison on one of the counts to be followed by five years probation on the second. Additionally, they were ordered to pay, jointly and severally, $465,-272.98 in restitution to their former clients for all of the counts of the indictment in which restitution was appropriate, including the counts dismissed as a result of the plea agreements. Following Motions to Vacate Sentence and Reduce Sentence made by both defendants, the District Court reduced the restitution required of Evan Miller to reflect the fact that some of the dismissed counts of the indictment did not name him. The court also stated that any restitution paid to the victims as a result of a civil judgment would reduce the

restitution obligation ordered by the court but otherwise refused to reduce the defendants' sentences. The defendants appeal the District Court's failure to otherwise grant their motions to vacate or reduce sentence.

The defendants raise several of the same arguments in their separate appeals. They both argue: (1) the District Court violated the plea agreements and Fed.R.Crim.P. 11 by ordering restitution; (2) the District Court could not order restitution payments without holding a hearing on the defendants' financial status; (3) the restitution award was unreasonable in amount; (4) the prison sentence was unreasonable in length; and (5) the District Court's failure to hold the requested hearings and failure to comment more extensively on the evidence is indicative of bias requiring reversal and remand for new hearings before a different judge. Additionally, Jonathan Miller argues: (1) the District Court should have reduced his restitution sentence relative to his brother's because he was less culpable; (2) the District Court's failure to affirmatively state that it had considered an alternative to incarceration requires reversal; and (3) the imposition of a special assessment was invalid under the origination clause and, with respect to count 25, constituted an *ex post facto* law.

## I.

The Millers first argue that the imposition of restitution violated the plea agreements since restitution was not mentioned as a possible penalty either in the plea agreements or at the Rule 11 hearings. In addition they argue that restitution can only be imposed for the offenses for which a defendant is convicted. We reject the defendants' plea agreement and Rule 11 arguments but agree that restitution can be ordered only for victims of the offenses of conviction.

■ The Millers argue that any restitution award violates the plea agreements

and Fed.R.Crim.P. 11, since restitution was not mentioned in their plea agreements or Rule 11 hearings. The plea agreements did not state that restitution would not be ordered, however. In fact, they explicitly stated that no other promises had been made to the defendants. Where a plea agreement does not address one aspect of a defendant's sentence, the reasonable assumption in most cases is that no agreement was reached on that issue, not that the court could not impose such a punishment. *See, e.g., United States v. Fentress*, 792 F.2d 461, 464 (4th Cir.1986) ("[w]hile the government must be held to promises it made, it will not be bound to those it did not make"). Since the agreements were silent on the issue of restitution, restitution could be ordered as provided in the restitution statutes. While the defendants argue that the restitution orders upset their expectations, we do not believe the expectations were reasonable, particularly since the restitution ordered was less than the maximum possible fine.

■ Any error in the Rule 11 hearings that resulted from failure to mention restitution is harmless within the meaning of Fed.R.Crim.P. 11(h). At the hearings, both defendants told the court that they knew a fine of $250,000 could be imposed on each count for a total of $500,000.[1] No fine was imposed. Defendants were not harmed by the substitution of restitution for a fine. As long as each defendant is required to pay restitution in an amount less than $500,000, the error was harmless. Fed.R. Crim.P. 11(h) ("[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded"); *Fentress*, 792 F.2d at 465–66.

■ At the time of the defendants' sentencing it was not clear whether the court made the restitution orders under the VWPA or the Federal Probation Act, 18 U.S.C. § 3651. In considering the post-sentencing motions, however, both the District Court and the parties treated the cases as

---

1. Evan Miller argues that he told the court that his maximum fine was $250,000 on both charges. A review of his Rule 11 hearing makes clear that this is not the case. Judge Woods asked Miller about the maximum fine he faced on each count separately. As to each count, Miller stated that he could be fined $250,000.

though restitution had been ordered under the VWPA. Accordingly, we will review the cases under the VWPA. *See also United States v. Padgett,* 892 F.2d 445, 448 (6th Cir.1989) ("unless a clear intention appears to the contrary, we will assume restitution orders are made pursuant to the broader provisions of the VWPA"). The VWPA provides in relevant part: "[t]he court, when sentencing a defendant *convicted of an offense* under this title ...., may order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution *to any victim of the offense.*" 18 U.S.C. § 3579(a)(1) (1982) (emphasis added).[2] We have interpreted the definition of "offense" narrowly, limiting restitution payments to "victims of the offense for which [the defendant] was convicted." *United States v. Durham,* 755 F.2d 511, 512 (6th Cir.1985); *see also United States v. Mounts,* 793 F.2d 125, 127 (6th Cir.), *cert. denied,* 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986). *But see United States v. Duncan,* 870 F.2d 1532, 1536 (10th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 264, 107 L.Ed.2d 214 (1989) (the term offense does not "restrict a sentencing judge to [consider] only those acts for which conviction was had, or for which the defendant pleaded guilty"). While the definition of "victim" is read more broadly in this Circuit, we have nonetheless stated that "Congress intended a 'victim' to be a person who suffered injury as a result of the defendant's actions *that surround the commission of the offense,* regardless of whether the actions are elements of the offense charged." *Durham,* 755 F.2d at 513 (emphasis added).

The record is ambiguous as to who is to receive the restitution payments ordered by the court. The presentence reports listed numerous victims of the indictment counts and suggested that the victims had together suffered more than $748,000 in damages, a figure far in excess of the amount awarded by the court. These ambiguities alone would be a sufficient reason to reverse the restitution orders. Without a clear statement of who the court considered to be a victim and the amount of restitution each victim was to receive, it is impossible for the defendants to determine what portion of the restitution orders has been offset by their payment of civil judgments.

The parties agree that a substantial portion of the restitution payments was ordered for victims of the dismissed counts of the indictment. It is impossible for this Court to determine on the record before us whether all the individuals who received restitution were victims of the offenses of which defendants stand convicted. In the interests of judicial economy, we consider the question of whether any victims of the dismissed counts can also be considered victims of the counts of conviction.

The indictment identifies two victims of the counts of conviction for whom the court could order $241,000 in restitution.[3] Count 18, to which both pled guilty, was a scheme to defraud Joseph Jacobson of $200,000 by issuing Jacobson fraudulent stock certificates in the Ingleside Convalescent Center, Inc. (ICC). Count 21, to which Evan Miller pled guilty, and count 25, to which Jonathan Miller pled guilty, involved letters sent as part of a scheme to defraud Analdine Lee out of $41,000, the proceeds from the sale of a house the defendants had sold on her behalf. The dismissed counts of the indictment involved other transactions which defrauded clients and financial institutions with whom the brothers dealt.

The government argues that restitution awards to the victims of the dismissed counts are analogous to awards in prior decisions of this Circuit in which awards of restitution for crimes other than the crime(s) of conviction were upheld. We do not believe that the principles of any of

---

2. Amendments effective after the date of the crimes committed in these cases modified and renumbered 18 U.S.C. § 3579(a)(1). The modifications to this section are not material to these cases. Cases decided under the modified version of the statute will therefore be considered.

3. There is some indication that a portion of the restitution had been paid to these victims prior to the court's restitution order. If restitution had already been made, then the court could not order a duplicate payment of the same damages.

these cases extend to the facts we have before us. The cases that impose restitution beyond the direct victim of the offense of which a defendant is convicted fall into one of three categories. In the first category are those cases in which a defendant is ordered to make restitution to a person injured by an act that, while not an element of the conviction offense, was nonetheless directly related to the crime of conviction. In *Durham*, 755 F.2d 511, for example, a defendant convicted of bank robbery was ordered to pay restitution to an insurer of an automobile that the defendant destroyed during the course of the defendant's getaway from the scene of the robbery. *See also Mounts*, 793 F.2d 125 (defendant convicted of being convicted felon receiving explosives could be forced to pay restitution to owner of car whose safe he attempted to blow up, since the car was stolen and damaged while escaping from the scene of the crime). On the face of the indictment and the limited facts in the record before us, none of the injuries caused by the dismissed counts appear to have been committed to aid the defendants in committing the offenses of conviction.

The second category of cases is similar to the first. In these cases defendants have been ordered to pay restitution based on the total amount of damage caused by their crime rather than on the amount of damages specified in the indictment. In *United States v. Anglian*, 784 F.2d 765 (6th Cir.), *cert. denied*, 479 U.S. 841, 107 S.Ct. 148, 93 L.Ed.2d 89 (1986), for example, this Court upheld a restitution order based on the total amount of stolen postal money orders received, not on the amount specified in the two substantive counts of which defendant was convicted. Anglian and several coconspirators had received over one hundred stolen postal money orders. Anglian was convicted of conspiracy and two counts of receipt of stolen postal money orders. The damages caused by the two substantive counts were $626.30, but the damages caused by the conspiracy as a whole were in excess of $15,000. The Court upheld a restitution order based on the higher damages of the conspiracy as a whole. The dismissed counts of the indict-ment in this case are not alleged in the indictment to be part of the same conspiracy. In fact, the indictment appears to allege that most of the crimes are separate schemes.

A third category of cases are those where a plea agreement specifically provides for restitution beyond the amount caused by the crime of conviction. *See, e.g., United States v. Kirkland*, 853 F.2d 1243, 1249–51 (5th Cir.1988). We do not express an opinion on the validity of this exception except to note that it does not apply to these cases since the plea agreements here were silent on the issue of restitution.

■ The government argues that the victims named in the other indictment counts are victims "who suffered injury as a result of the defendant's actions that surrounded the commission of the offense." *Durham*, 755 F.2d at 513. Apparently, the government believes that the dismissed counts are related to the counts of conviction because the events occurred contemporaneously and because most of the dismissed counts also involved an abuse of the defendants' positions as attorneys. We do not believe that these facts are sufficient to bring the restitution orders within the scope of the VWPA. Unless the injury is to the victim of a count of which defendant is convicted, a compensable injury must be caused by an act intended to aid the commission of the offense of conviction or in some other way be part of the same scheme as the offense of conviction. A close relationship in time or a similarity in modus operandi is not sufficient, standing alone, to establish that the acts were committed as part of a common scheme.

A Tenth Circuit case deserves further mention. In *Duncan*, 870 F.2d 1532, the defendant was convicted of one count of mail fraud in connection with a scheme to fraudulently obtain a life insurance policy on another individual, Zollie Monroe. The insurance policy was to have made Duncan the beneficiary. Duncan had been taking care of Monroe and had apparently converted some of Monroe's funds to his own use, though he was not charged with this crime.

The court upheld a restitution order that required Duncan to pay back these converted funds. The court believed that the term offense allowed a court to order restitution "when there is a significant connection between those other criminal acts and the crime for which a guilty plea was entered." 870 F.2d at 1536. The court held that there was a significant connection between the insurance scheme and the conversion of Monroe's funds since both crimes took advantage of Monroe's dependent situation and trust of Duncan. Monroe was a victim of the conversion scheme and at least a potential victim of the insurance scheme. *Id. See also United States v. Hill,* 798 F.2d 402 (10th Cir.1986) (defendant convicted of stealing goods from his employer and transporting them in interstate commerce could be ordered to pay restitution for earlier thefts from the same employer). Here not even the victims are the same.

The injuries to ICC that resulted from the defendants' conversion of ICC funds, the subject of dismissed counts one, three, five, and six of the indictment, are related to the scheme to defraud Jacobson. While the government may well be able to prove a close connection between the crimes, the fact that the Millers abused their positions of trust as counsel to ICC in two apparently independent schemes does not mean that the two frauds were part of the same scheme. To the extent *Duncan* reaches a contrary conclusion, we decline to follow it.

■ Accordingly, the sentences must be vacated so that the District Court can reconsider the restitution orders. Since the District Judge did not focus on the relationship between the crimes of conviction and the other crimes of indictment, and since the government may be able to demonstrate that the other counts of the indictment are part of a common scheme with the crimes of which defendants were convicted, we remand the restitution portions of the sentences for further proceedings. On remand, the District Court should also make clear whom it has found to be a victim entitled to restitution payments and the amount of restitution each victim is to be paid.

An additional problem with the restitution orders not raised by the parties is the specific language used to order restitution. In the defendants' Judgment and Commitment Orders, restitution was imposed only on the second of the two counts with which each defendant was charged, not on both counts. If restitution is to be imposed on count 18 of the indictment, the restitution orders must be made as part of the defendants' sentences under count 18. Since we are remanding the cases for further proceedings, the District Court is free to rephrase its sentencing orders.

## II.

■ The Millers argue that under the VWPA, 18 U.S.C. § 3580, the District Court could not impose orders of restitution or deny their motions to amend or vacate their sentences without first holding a hearing on the defendants' earning ability, assets, family obligations, and other factors related to the orders of restitution. We believe the hearings held by the court in these cases were sufficient.

The defendants were given a copy of their respective presentence reports which outlined their assets, income, general financial status, family status, and discussed the injuries sustained by the victims of their crimes. The presentence reports also stated that the District Court must decide what restitution, if any, should be ordered and suggested that restitution far in excess of that ordered was possible. The factual findings of the presentence reports went unchallenged at the sentencing hearings. Further, both the Millers and Evan Miller's attorney spoke of restitution when they addressed the court just prior to imposition of sentence, though they did not mention specific amounts or discuss their financial status. Evan Miller's attorney stated that "it appears, within sixty days Mr. Miller will have a substantial amount of money, in six figures, I would say in order to make restitution." Having chosen not to challenge the information contained in the presentence reports, although clearly aware of the possible restitution orders that might be imposed, the defendants cannot now

claim that they were not given the opportunity to be heard.

■ While the District Court did not explicitly state that it had considered the statutory factors at the time of sentencing, the order denying Jonathan Miller's post-sentencing motions and the order granting in part Evan Miller's motion for reduction in sentence stated that these factors had been considered and rejected. Under the precedents of this Circuit, no additional findings of fact are required. *United States v. Purther*, 823 F.2d 965, 969 (6th Cir.1987). While the defendants argue that the court had an obligation to state that the factors were considered prior to imposing sentence, we do not believe it was error for the court to correct the oversight in a post-sentencing order on motion of the parties. Contrary to the defendants' assertion, we do not believe the judge was required to hold new sentencing hearings.

### III.

■ The Millers' final argument concerning the restitution awards is that the awards are *per se* unreasonable, since they exceed by several times each of the Millers' annual incomes and ignore their other financial obligations. On balance we cannot say that the amount of restitution payments ordered by the court was unreasonable based upon the financial information before it. This Court has consistently found, and the VWPA specifically provides, that a defendant's ability to pay is only one factor to be considered in an order of restitution. *Mounts*, 793 F.2d at 128. Further, both the presentence reports and statements made at the sentencing hearings indicate that the Millers have assets to satisfy the orders. The District Court stated that it had considered this factor both at the time of sentencing and in rejecting the defendants' post-sentencing motions. Finding no abuse of discretion, we reject the defendants' argument that awards of this size were *per se* unreasonable.

4. They also argue that if they were sentenced under the Sentencing Guidelines—and no departure was made—that their prison sentence

### IV.

■ The Millers argue that sentencing them each to the five year maximum on the first count to which they pled guilty and sentencing them each to five years probation on the second count is *per se* unreasonable, since they are first time offenders and did not commit crimes of violence. They apparently believe that the court should only have sentenced them to community service.[4] Given the nature of the crimes the defendants committed and the particular positions of trust they occupied, we do not believe that the District Court abused its sentencing discretion. *See e.g., United States v. Barbara*, 683 F.2d 164 (6th Cir.1982) (judge who sentenced attorney convicted of interstate transportation of forged securities and mail fraud to maximum term did not abuse his discretion given particular nature of an attorney's position of trust).

■ The defendants argue that the District Court was required to give reasons for giving them such lengthy sentences as first-time offenders. We disagree. It is sufficient that the defendants were given a copy of their presentence reports and a chance to present their positions to the court. We find no authority for the proposition, nor is any cited, that a defendant must be given in detail a summary of the judge's reasons for imposing a specific sentence.

Jonathan Miller argues that the District Court erred in failing to consider a non-incarceration sentence since he committed a nonviolent crime. His argument is based on a Sense-of-the-Congress resolution, contained in section 239 of P.L. 98–473, set forth after 18 U.S.C.A. § 3551 (West 1985). Even if we were predisposed to give binding effect to this resolution, which we are not, we would find the requirements met in this case. The defendants both argued for alternatives to incarceration. By rejecting these arguments and sentencing the defendants to prison the court implicitly considered and rejected alternatives to incarceration.

would be approximately half of what the court ordered in these cases. The guidelines, of course, are not applicable to these cases.

## V.

Jonathan Miller argues that the imposition of a special assessment in his case violated the origination clause of the constitution. While we are aware that the Supreme Court recently granted certiorari on this question, *United States v. Munoz-Flores*, 863 F.2d 654 (9th Cir.1988), *cert. granted*, ─── U.S. ───, 110 S.Ct. 48, 107 L.Ed.2d 17 (1989), this Circuit has rejected the origination clause argument. *E.g., United States v. Ashburn*, 884 F.2d 901 (6th Cir.1989).

## VI.

 Jonathan Miller argues that the imposition of a special assessment on count 25 constituted an *ex post facto* law. Count 25 charged Jonathan Miller with mail fraud. The specific act charged was the mailing of a letter on November 5, 1984, in furtherance of a scheme to defraud a client.[5] The authority for the special assessment is found under 18 U.S.C. § 3013(a)(2)(A) which was passed as part of the Comprehensive Crime Control Act of 1984. The effective date of the Act was November 11, 1984. This argument appears to have merit, though we note that the indictment states that the specified mailing dates were only "approximate." Since the issue was not briefed by the government and involves a finding of fact concerning the date the crime was committed, we leave it to the District Court to resolve on remand.[6]

## VII.

Jonathan Miller also argues that the District Court abused its discretion by not giving him a lesser sentence than it gave his brother. We find no abuse in the prison sentence ordered for Jonathan Miller. Since we do not know what restitution will be ordered on remand, we do not address the question as it relates to his restitution obligation.

## VIII.

Finally, the defendants argue that the District Court's failure to hold every requested hearing and failure to comment more extensively on the evidence is indicative of the District Court's bias against the defendants. Accordingly, the defendants argue that the resentencing should be before a different judge. We find no merit to these allegations and accordingly refuse the requested relief.

## IX.

The order of the District Court denying the defendants' motions to vacate sentence is REVERSED, the defendants' sentences are VACATED, and the cases are REMANDED for further proceedings consistent with this ruling.

---

5. Evan Miller's conviction on count 21 of the indictment presents the same problem. Count 21 relates to a letter mailed February 23, 1984.

6. The offense of mail fraud occurs on the date of the mailing of the letter. For example, *Purther* involved the application of the restitution provisions of the VWPA. The Court in effect upheld the application of the VWPA where the financial loss occurred prior to the effective date of the statute but the use of the mails occurred afterwards. A panel of this Court reasoned that the mail fraud violation "is not the scheme to defraud, but the use of the mails to execute the scheme that constitutes the offense of mail fraud.... So long as the perpetrator is using the mails to further the scheme, he is engaged in the offense." *Further*, 823 F.2d at 968.