919 F.2d 738
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kenneth Lee PAYTON, a/k/a Kenneth L. Willis, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 89-6348.
 United States Court of Appeals, Sixth Circuit.
 Dec. 7, 1990.
 
 Before NATHANIEL R. JONES and WELLFORD, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Following a grand jury indictment on two counts of violating 18 U.S.C. Sec. 2113 (robbing a federally insured bank by force, violence, and threats), and during the trial on these charges, Payton, the defendant, entered into an oral plea agreement. Counsel represented Payton at the time of the plea and sentencing hearing which followed.
 
 
 2
 At the time of the guilty plea submission, the district court advised Payton of his rights, including waiver of his right to a jury trial. He asked Payton whether he was satisfied with the advice of his counsel; Payton responded that he was satisfied with the representation (he also stated that he did not want to talk further to his attorney about the plea). The district court then advised Payton of the maximum penalty he could receive under the indictment:
 
 
 3
 You understand that the maximum sentence that the court could impose under Count I of this indictment is a fine of $5,000.00 or imprisonment for 20 years, or both?
 
 
 4
 Payton responded affirmatively and also indicated that no one had made any threats to him regarding the plea. The court then advised Payton as to the effects of the guilty plea. The assistant United States attorney originally advised the court that, under the terms of the agreement, no sentence of restitution would be imposed. Shortly thereafter, however, he told the court that he was mistaken and that the matter of restitution needed to be addressed. The court then told Payton that in addition to a potential fine and imprisonment, he would be subject to a special assessment fee. Payton then asked the district court about the fee and when he would have to pay it.
 
 
 5
 The district court asked whether restitution would be incorporated into the plea agreement. After conferring in an off-the-record conference, the prosecuting attorney advised the court that the plea agreement would incorporate restitution. Mr. Tinsley, Payton's attorney, made no objection and Payton himself remained silent. All conferred at this point with the probation officer about the presentence report. Only then did the court accept the plea agreement.
 
 
 6
 The district court sentenced Payton to two concurrent prison terms of fourteen years and six months, mandating that this sentence run consecutive to a forty-year sentence that Payton was already was serving in an Indiana state prison. The district court also ordered Mr. Payton to pay restitution to the bank that he robbed in the amount of $1,994.00, within five years following his term of imprisonment. The court went into precise detail as to how the amount of restitution was calculated and there were no questions at sentencing about this.
 
 
 7
 Thereafter, however, Payton filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2255, claiming unlawful detention under the guilty plea on four grounds: 1) it was obtained as a result of illegal threats by the government; 2) it was the result of threats made by his "co-defendant"[1]; 3) it was "induced by the trial court" because it denied him effective assistance of counsel; and 4) prior to entering the plea, he was not informed that restitution could be part of the sentence imposed.
 
 
 8
 At the hearing on this claim for relief, Tinsley testified that he did not remember whether he and Payton had discussed the Dangerous Special Offender statute, which was a part of Payton's claim of coercion by the government. Tinsley did recall, however, that the possibility of being prosecuted as a dangerous special offender acted as an inducement for Payton to accept the guilty plea, but there was nothing in Tinsley's notes indicating any potential dangerous special offender charge. Tinsley testified that the dangerous special offender statute "came up" during his discussions with the United States attorney, but he could recall nothing specific about this conversation. He further testified that Jones initiated the conversation about this statute.
 
 
 9
 Jones, the United States attorney, on the other hand, testified that he did not believe that there were any discussions between himself and Tinsley regarding the statute. He further testified at the hearing that he had no notes in his files regarding the statute. Based on the normal procedures in such a situation and his twelve years of experience, he could affirmatively say that a conversation of that sort did not occur. The prosecutor testified that he would not threaten to prosecute someone under this statute without being sure a defendant met all its requirements.
 
 
 10
 Payton asserts that his attorney told him of the prosecutor's alleged threat to charge Payton under the special offender statute unless he pled guilty, and that his threat "stopped [him] cold dead in [his] tracks." The district court then made his findings and denied Payton's writ of habeas corpus.
 
 
 11
 The district court found no threat to prosecute Payton under the special offender statute. The court relied on the prosecutor's "complete integrity and fairness." The court believed the assistant United States attorney when he testified that he did not threaten to prosecute Payton under the special dangerous offender statute, and concluded that Tinsley was mistaken on this subject.
 
 
 12
 Payton also claims that he did not have the opportunity to object to paying restitution. The district court found that although Jones originally believed that no order of restitution would be entered, he subsequently advised the court that he was mistaken and that the matter of restitution would have to be addressed. Furthermore, the district court found that the evidentiary hearing reflected that Tinsley had considered the issue of restitution and argued that issue.
 
 
 13
 The district court further found that Payton failed to object to the sentence which included restitution. Payton had questioned the district judge about the special assessment fee of $50 but made no objection to its imposition. In light of Payton's experience with the criminal justice system, we agree that it was reasonable to infer that if Payton had a question or objection regarding restitution he would have raised it at the hearing.
 
 
 14
 The district court's findings of fact in habeas cases are subject to the clearly erroneous standard of review. McCall v. Dutton, 863 F.2d 454, 459 (6th Cir.1988), cert. denied, 109 S.Ct. 1744 (1989). Deference to the court's findings are especially warranted in cases where the critical evidence is testimonial. Id.
 
 
 15
 The court found that Mr. Jones did not threaten Mr. Payton with the possibility of prosecuting him under the special dangerous offender statute. This finding of fact is not clearly erroneous.
 
 
 16
 In reaching its decision, the district court relied on the principle enunciated in United States v. Grewal, 825 F.2d 220 (9th Cir.1987): "[F]or a Section 2255 movant to successfully challenge a guilty plea based upon a violation of Rule 11, he must establish that the violation amounted to a jurisdictional or constitutional error or that the violation resulted in a complete miscarriage of justice or in a proceeding inconsistent with the demands of fair procedure." Id. at 222. The district court found that although the discussions concerning restitution were brief and although Payton did not know about the possibility of the imposition of restitution until the sentencing hearing, the standard set out in Grewal had not been violated. We conclude that the district court's findings of fact the voluntariness of the plea are not clearly erroneous.
 
 
 17
 Payton maintains that the district court erred in not hearing evidence on the issue of whether Payton's guilty plea was the product of threats made to him by his co-defendant and others in the penitentiary. Finally, he claims that he was prevented from objecting to the order of restitution by a deputy marshal at the sentencing hearing. The district court found all of these claims "patently incredible," and declined to hear evidence on these issues.
 
 
 18
 The district court here reviewed the records and files of the case, specifically relying on the plea hearing before District Judge Ballantine, who specifically asked Payton if there had been any threat made against him. Payton said there had been none. Where the court has scrupulously followed the required procedures, "the defendant is bound by his statements in response to that court's inquiry." Baker v. United States, 781 F.2d at 85, 90 (6th Cir.), cert. denied, 479 U.S. 1017 (1986).
 
 
 19
 No evidentiary hearing was required in this regard, and we find no error in the conclusion that Payton was neither threatened nor induced by others to plead guilty.
 
 
 20
 Payton finally maintains that the sentencing court erred in not considering his financial condition when ordering him to pay restitution. Because the record is silent as to any considerations of his financial condition, we remand this case to the district court to develop a record concerning Payton's financial ability to effect restitution.
 
 
 21
 The Victim and Witness Protection Act provides:
 
 
 22
 The court, in determining whether to order restitution under section 3579 of this title and the amount of such restitution, shall consider ... the financial resources of the defendant, the financial need and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.
 
 
 23
 18 U.S.C. section 3580(a).
 
 
 24
 The trial court need not make specific findings of fact with respect to a defendant's financial condition, United States v. Purther, 823 F.2d 965, 969 (6th Cir.1987), but the Act requires that the trial court consider the financial condition of defendants before imposing restitution. We have held that the statute "clearly" mandates that these considerations be made a part of the record. United States v. Durham, 755 F.2d 511, 515 (1985).[2]
 
 
 25
 In Durham, this court found that the sentencing hearing record was "devoid of any indication that the trial court considered (defendant's) financial condition." Id. This court then remanded the case to the district court to develop a "complete record."
 
 
 26
 Because the sentencing hearing record in this case is "devoid of any indication" that the district court considered Payton's financial condition ordering restitution, we remand the case so that the district court may consider Payton's financial resources in accordance with the Victim Witness and Protection Act.
 
 
 27
 We AFFIRM the district court with respect to alleged errors in respect to the guilty plea. We REMAND for further consideration of Payton's financial resources with respect to the restitution aspect of the sentence only.
 
 
 
 [1]
 Both parties refer to Samual Ricketts as Payton's "co-defendant." Ricketts, indicted with Payton for the same offenses, pled guilty to the charges prior to Payton's scheduled trial
 
 
 [2]
 The defendant in Durham also had pled guilty to the charges against him. The court did not address whether a plea of guilty has any effect on the Act's requirement that the trial court consider the defendant's financial condition